In the Matter of the Claim of TILLIE SIER, Appellant. LOUIS L. LEVINE, as Industrial Commissioner, Respondent.

Third Department, June 28, 1973.

*Tillie Sier,* appellant in person.

*Louis J. Lefkowitz, Attorney-General* (*Samuel A. Hirshowitz, Murray Sylvester* and *Irving Jorrisch* of counsel), for respondent.

STALEY, JR., J. This is an appeal from a decision of the Unemployment Insurance Appeal Board, filed December 8, 1972.

Claimant, a postal clerk, was employed by the Federal Government in the United States Post Office until June 30, 1972 when she retired. Claimant's retirement was made in response to a management request during a reduction in force. On June 5, 1972, the Postmaster General sent a letter to eligible employees, including claimant, stating that, in view of the reorganization of the Post Office, any eligible employee who desired to retire could do so, and that, if such resignation was effective on or before June 30, 1972, the employee would receive a 4.8% cost-of-living increase in the retirement annuity. The letter further stated that it was not intended to coerce any eligible employee to resign.

The Federal employer reported that the reason for claimant's separation from employment was "Involuntary Separation— resigned in response to P M G's request of 6-5-72." The board found that claimant elected to retire on a voluntary basis rather than continue in employment with the Post Office, and denied her unemployment benefits on the ground that she left her employment without good cause.

In *Matter of Hiken* (40 A D 2d 926) we had a similar question before us and reversed the board holding that claimant was entitled to benefits on the ground that the "determination of the Federal agency as to the reason for appellant's separation from employment as 'Resignation—RIF Situation—Involuntary Separation' is binding upon the board." On the present appeal, and also on the reargument which we granted in the *Hiken* case, the Industrial Commissioner has requested that we reconsider the issue and our prior determination on the ground that the term "Involuntary Separation" in the Federal employer's finding is intended to apply for pension and retirement purposes only, and is not inconsistent with the finding appealed from that claimant's resignation constituted a voluntary leaving without good cause.

On this appeal, respondent has attached to its brief in support of its position (1) letter of the United States Department of Labor dated December 4, 1972, Unemployment Insurance Program Letter No. 1214 with excerpts from Federal Personnel Manual; (2) Unemployment Insurance Program Letter No. 1094 dated December 21, 1970; and (3) letter from the Postmaster General dated June 5, 1972, a copy of which was sent to claimant.

In the letter from the Postmaster General dated June 5, 1972, it is stated: "The situation creating the discontinued-service retirement opportunity arises from the fact that we have an excess number of employees. But for the No-Layoff provision in our National Agreement, we would be actively engaging in a system-wide reduction-in-force. The situation that we find ourselves in qualifies under existing Civil Service Commission instructions for discontinued-service retirements. Separations resulting from resignations submitted in response to a request from management will qualify as discontinued-service retirements."

In subchapter 511, the Federal Personnel Manual defines the term involuntary separation as follows: "The term involuntary separation means any separation against the will and without the consent of the employee, other than separation for fraud on charges of misconduct or delinquency. Examples are: Reduction in force; abolishment of position; lack of funds; expiration of terms of office; * * *. Note, however, that whether a separation is involuntary depends upon all the facts in a particular case, it is the true substance of the action which governs rather than the methods followed or the terminology used. The responsibility for determining whether a separation is involuntary for retirement purposes rests with the Commission. * * *

"After an agency determines that a reduction in force is necessary, it may, before resorting to the prescribed reduction-in-force procedures or while these procedures are in process, request by letter of resignation of employees in the affected competitive area who meet the age or service requirements, or both, for discontinued service retirement. Separation resulting from a resignation submitted in response to such a request will be considered involuntary for retirement purposes."

In the Unemployment Insurance Program, Letter No. 1094 dated December 21, 1970, it is stated that: "We have been unsuccessful in our efforts to influence the Commission to revise the prescribed 'nature of Personnel Action' and 'Remarks' entries to eliminate the contradictory statement that the voluntary resignation was an involuntary separation. The Commission intends that its prescribed phraseology convey information that the resignation is an involuntary separation for retirement purposes. In view of this, several States have indicated that they simply apply the disqualification provisions of their laws respecting voluntary quits without good cause.

"On the other hand, several States report that they do not disqualify these claimants for voluntarily quitting based on one or more of the following facts: that the resignations result from action initiated by the employer to accomplish reduction of the work force; that the employer's request for resignation is directed selectively to the specific individual; that direct employer request for resignation substantially reduce or eliminate from consideration the voluntary aspect of the resignation; or that the Federal employer holds that resignations under these conditions are involuntary separations."

Respondent here agrees that the findings of the Federal agency are final and conclusive pursuant to section 8506 of title 5 of the United States Code. The Postmaster General advised claimant that the intention of the offer of an increased annuity for persons retiring no later than June 30, 1972 was to effect a system-wide reduction in force.

The objective of reducing the number of employees in the agency could be accomplished by reducing the number of employees, abolishing certain positions, or encouraging those employees with the required years of service and age to submit resignations. The regulations provide that an employee losing his position by a reduction in force or abolishment of his position would be subject to an involuntary separation. It, therefore, seems proper that an employee who co-operates with the objective of reducing the number of employees by resignation, should be entitled to the same benefits as those who lost the position by a reduction in force, or by abolishment of their position.

The letter of December 21, 1970 indicates that the Commissioner regards separation under claimant's circumstances as an involuntary separation. We agree with those States that do not disqualify a claimant who voluntarily resigns as a result of action initiated by the employer to accomplish a reduction of the work force. Claimant's separation was involuntary and for good cause, and she should receive the unemployment benefits to which she is entitled. Under the circumstances here, the Commissioner should be bound by the conclusiveness of the findings of the agency pursuant to the Federal law.

The decision should be reversed, without costs, and matter remitted for further proceedings not inconsistent herewith.

HERLIHY, P. J., GREENBLOTT, SWEENEY and REYNOLDS, JJ., concur.

Decision reversed, without costs, and matter remitted for further proceedings not inconsistent herewith.